v. United States Department of Agriculture. Mr. Boyles, for the petitioners. Mr. Aguilar for the respondent. The Administrative Procedures Act, 5 U.S.C. 558B, provides a sanction may not be imposed except within the jurisdiction delegated to the agency and is authorized by law. The petitioners in this case have been assessed fines by the USDA for alleged violations of the Horse Protection Act and have been disqualified from their professions as horse trainers and boarders for periods of one to five years. The Horse Protection Act vests jurisdiction in the Secretary and Section 1825B1 provides no penalty shall be assessed unless such person is given notice and an opportunity for a hearing before the Secretary with respect to such violation. The amount of such penalties shall be assessed by the Secretary by written order. And the penalty in this case has been set aside. Everyone agrees we have to remand. No, I don't agree. Well, let's assume we're going to remand. You'll get you'll get a hearing before an administrative law judge appointed consistent with Lucia. Your Honor, we'll get a hearing before an administrative law judge who is not properly appointed according to law because the administrative law judge serves as a principal officer and has two levels of tenure protection in violation of the dual protection rules set forth in free enterprise. So, no, we will not get a hearing before a lawfully appointed administrative law judge. That's our point, that our sanctions have been entered not by the Secretary and not by anybody who's lawfully appointed under the Constitution or is required by law to decide the case that's before you. So you mentioned two things that you think would be wrong with the ALJ if it were to go back on remand. Yes. One is that you think the ALJ is a principal officer, and the second is that you think there's a double layer of four cause protections that render the removal part of it problematic under the Constitution, in your view. Yes. So as to the second of those, you didn't flag that the first time you went through the administrative proceedings, as I understand. We didn't flag anything. It was a default judgment, but that's correct. But you still had the proceeding before the J.O. I mean, you did flag something because the J.O. Oh, we flagged a lot of things. Yes, we did flag a separation of powers problem before the J.O., but I don't want to have you take that too far. The dual tenure problem, we did not. The dual tenure problem didn't arise even before the J.O. The administrative law judges, they were considered employees. Don't forget, until November of 2017, the government took the position that all ALJs were employees. Our ALJs were not appointed to 3105. But the government has also taken the position that the J.O.s were not principal officers, but you still flagged that issue. I'm sorry, what? In other words, the fact that the government was taking a particular position didn't prevent you from raising the issue. Well, it wasn't. Yes, it did. How would we raise this issue? Solicitor General wasn't inhibited from raising the issue before the Supreme Court, though it was not raised before this court in Lucia, because the first time it was right and became a problem was when they said that the administrative law judges must be appointed by the head of the department, and that put them on 3105. 3105 only says the agency may appoint as many administrative law judges as it needs. Our position is there were no administrative law judges appointed by the head of the department or that had the tenure protection of 3105. They were, as in the recent case out of the federal circuit, considered employees. And that was the government's position in our case, both at the administrative level, and so we can't forfeit something that didn't exist. I'm still not completely sure I follow that because the argument still existed, right? The argument would have been you're not lawfully appointed administrative law judges, but if you were appointed administrative law judges, you wouldn't be lawfully appointed administrative law judges because you've got two levels of tenure protection. I'm afraid as trial advocates that that's a little far from our... You can argue things in the alternative, which is what you're doing here. There's no reason to argue it in the alternative. They weren't subject to two levels of tenure protection. They weren't appointed by the secretary. They weren't appointed under 3105. There's nothing in the record that says how they were appointed, who appointed them, or if they were even appointed at all, or instead hired by... I'm sorry, what's changed? Nothing. What's changed? Oh, the administrative law judges have now been appointed, or at least have gone through a ceremony of appointment... By the secretary. By the secretary. Post Lucia. Well, actually, they did it before Lucia, which is a separate problem that's not at issue here. And all of that happened after you went through the administrative process? All that happened after we filed our petitions to the judicial officer. And, of course, we didn't know about that. There's no document that shows that they were appointed. There's no announcement. There's just cases subsequent to our appeals being filed in May of 2017 where the ALJs or the JO, in their opinion, say, well, there was a ceremony held in late July of 2017 and in December of 2017 where the secretary appointed us and we took an oath. So I assume from reading that that sometime after we filed our petitions with the judicial officer, months after, they at least attempted to appoint the administrative law judges under 3105. Of course, they didn't have the authority to do that because the regulations from the Office of Personnel Management were still in existence at that time, which gave you the option of appointing one of three candidates. Those regulations weren't repealed by the president until July 10, 2018, after the decision in Lucia, so that the head of the department could pick who he wanted to appoint or she wanted to appoint, as opposed to picking between options of the Office of Personnel Management submitted to the U.S. Court. You do have arguments that you could win on if it were to go back. I know you don't want it to go back, but if it were to go back, you do have arguments that you could win on and get all the way home, regardless of your constitutional challenges to either the ALJ or the JO. I don't know of any. What one? Help me. I thought you raised factual challenges to the allegations made by the agency. Oh, yes, let me mention that. They say, yeah, we could win. Just as a matter of some interest, there's been approximately 350 initial decisions by ALJs in this century. Of those, 18 involved the Horse Protection Act. That's initial decisions. All the rest of them were consent decisions or default decisions where the responding party, like our clients, had to pay a fine or take a disqualification. Of those 18, nine of the decisions were in favor of the USDA, and nine were in favor of the respondent in those cases. The USDA didn't want it. That leaves us with nine. Of those nine, seven were appealed to the judicial officer. Of those seven, six were reversed in favor of the USDA. So you have a total of three cases out of 387 ALJ initial decisions, of which 18 were just the Horse Protection Act. That's a winning chance of 1%. I'm sorry, we don't think that's good. We think a better system could be employed, and we think Congress should make that decision about what the better system is, and not Article III judges. That goes to my question. So assume that we agreed with you that the double for-cause protection was unconstitutional. Yes. I mean, what exactly is the remedy that you want? I don't think there's any remedy this court can provide, because this court is an Article III court and not Congress. The way it's done, apparently, after free enterprise, and in several cases, including from this court, is to say, well, what would Congress want? Would they want us to do away with the agency or something? You know, that's a real important question in something like the Consumer Finance Protection Bureau. But in this case, we're talking about an agency with a $105 billion budget and more than 100,000 employees. This is a teeny little part of it. If you say you can't prosecute cases under this because the ALJs have dual level of tenure, then you just don't have a lawful system. Just like it says, you don't have jurisdiction. And so if you don't have jurisdiction either, the secretary can personally hear these cases. That's an option that Lucia points out. Or Congress can fix the problem. So you don't think there's any severance remedy here? No, I do not think. Like that wasn't free enterprise. There's no, you don't think there's any severance remedy? Let me address the severance. I mean, in the alternative, you don't think there's, I mean, do you think severance? No. You're sort of suggesting, I think, that severance cannot be a constitutional remedy, that courts can't sever parts of statutes. Am I saying that? Is that? Yes, I am, Your Honor. The Supreme Court severed in free enterprise. And that was a really interesting decision, if I could address that point. In free enterprise, like here, would you sever and say ALJs don't have tenure protection? Or would you say the members of the MSPB? I mean, that's where your dual tenure problem arises. In free enterprise, there was no act of Congress that the Supreme Court could declare unconstitutional and say the members, the commissioners, will no longer have protection. As Justice Breyer pointed out, and did this whole appendix, the SEC was created in 1933. At that time, the governing law from the Supreme Court of the United States was Myers. Myers said you couldn't, Congress couldn't do anything. It wasn't until 35 that you have Humphrey's estate. There's not any impingement by Congress in creating tenure protection for the commissioners of the SEC. There's just not. So all you had was, well, we'll sever and make these board members not have tenure protection. I, for the life of me, can't see how that gave the president more ability to see that the laws are effectually enforced. But that's the precedent that we have from the Supreme Court. I'm sorry, what? You may disagree with that, Prime Minister, but that's the... Oh, no, I think the Supreme Court gives you discretion. Does it tell you you must declare the inferior officers' tenure unconstitutional, or the principal officers' tenure unconstitutional? Free Enterprise doesn't answer that, because there was no congressional... So how would you have us answer that question in this case? Huh? How would you have us answer that question in this case? We cannot provide a remedy. That's what I would have you answer the question. Congress should do it. Do you have any case in which either the Supreme Court or this court has found some structural problem in administrative adjudication, appointments, removal, something like that, and has, as a result, shut down enforcement rather than fixed the appointment or removal problem that gives rise to the judgment? I can't think of one. Nothing that I can immediately... I can't think of one. I'm trying to think of one. I think there is one, but I can't think of it right now, and I'd like to save my 25 seconds for rebuttal. We'll give you time on rebuttal. Okay. Yeah, so don't worry about that. I need to think. I'm sure I prepared myself for an answer to that question, but I can't remember it. That's just the way it goes. One more question for me. So you ask us to address... Well, I know you don't want to remand. But if we remand, you have a set of arguments for why we need to worry about the ALJs who will necessarily hear the case as soon as it goes back. Why should we also strain to reach your argument about the judicial officer, which is two steps removed and a little bit more speculative, because we don't know how the case will come out before the ALJ. We don't know whether it will be appealed to the judicial officer. We don't know how these recusal issues will shake out. It seems like that part of your argument for plowing ahead is much more tenuous. It seems to me like it's far more important. What you have is our clients have been penalized, whatever it may be, and the chances are probable, highly probable, that they're going to be back in front of the J.O. if you remand it. And we're going to have another situation where we come to this court and no principal officer appointed by the president and confirmed by the Senate has ever touched this case. Suppose you win. Suppose you win before the ALJ. Well, you know, talk about speculative. All right. Suppose you lose an appeal and the judicial officer who has already touched this case before recuses herself. And the secretary decides it. And of principle. And we solve the ALJ problem somehow. No, but you've solved the judicial officer. I don't... In your case. In this case, neither the ALJ nor the judicial officer, who is the alter ego of the secretary under the statute, would address whether the ALJs were lawfully appointed. They said that was for the court. You've got to... I understand. I'm asking you to assume we address all of your arguments about the ALJ. Oh, and then we lose... Why should we address, at this point, your arguments about the ALJ? Because there's no regulation. They can adopt a regulation, but they've had three years to do that. There are no regulations under which rules of practice. There are no rules of practice under which the secretary can make the decision. All of the rules of practice are directed to the judicial officer making the decision. The secretary can withdraw the delegation of... Prospectively withdraw the delegation of authority. That just leaves nobody, because what rules would we follow under which the secretary then could decide? If there's no specific assignment of authority, I would think the cabinet agency head would have authority. Why should we speculate about that? He simply doesn't under their rules. He does under the statute. There's just a general background default assumption that the agency can act. I'm sorry, what? There's just a general background default assumption that an agency can act. Correct. And if there's no other actor, then obviously you can go to a secretary. And that's precisely what the statute says, is the secretary does have that authority. What I'm saying is we've got to appeal. We couldn't appeal to the secretary in our case, because all of the rules that have been in effect during the whole time of this case require appeal to somebody else. There's just no rule. It doesn't tell us what to do. What happens? There's only one judicial officer. Right now. And she presumably has a recusal problem in your case. She does, yes. Okay, so what happens? Case goes back. You lose before the agency. It's an administrative appeal to the judicial officer, and she recuses. What happens then? The secretary can appoint up to two at one time. Disappoint another one. But the government already says that it's – I'm sorry. Go ahead. Well, the government already says in its brief that it might just go to the secretary. Well, why doesn't it say in its rules, which it has control over, that it will go to the secretary? But we at least know from the government's briefing that it thinks it can go to the secretary. But not under the rules. Under what rule can it go to the secretary? Under what rule of practice? Just under the background assumption that whenever an agency is created by statute, the agency head can act. I don't disagree with that. There's just no rule that allows it. Well, can I ask a question? I mean, if it were to go to the secretary, would that satisfy your concern? Because it seems also that you raised some questions about that, you know, because there would be some due process concerns with someone who is not independent deciding the case. Oh, I – well, I don't believe the secretary would meet the criteria of impartiality under Section 557B of the Administrative Procedures Act. I don't have any choice about that. I mean, the secretary ultimately has the authority to do this. The petition and the complaint in this case on page 1 of the joint appendix says, this is a proceeding before the secretary. Our complaint is it never has been and it never will be because the rules as they stand don't allow it. I mean, just as courts have said, well, officers in the patent division, we'll cut tenure protection. And, you know, that's the – we don't want to be before judges that we just took away their tenure protection. We don't want to be judges that don't have tenure protection. That's why we like to be before you, not them. But the administrative agency system doesn't completely give us that. It just simply says that any person who makes a decision within the process has to be impartial. Well, okay, the secretary has that authority. But when you – when the secretary adopts rules that delegate that authority to others, then he gives up that authority. If he wants to repeal the rules and tell me how I can appeal to him, that's quite another thing. Can I ask you this question? So a lot of your argument seems to be operating on this premise that you have an entitlement not to have to go through a proceeding before an agency where you have a constitutional objection to the way the agency proceeding is constructed. I'd word it a different way. I'd say we have an entitlement, an absolute right to have our cases go through proceedings where the officers who administer it are lawfully appointed and where the agency has jurisdiction. And neither one of those apply in our case. Okay, so I'm not going to – I'm not going to quibble with you on that. Let's just suppose that I agree with that characterization. My question is this, that that doesn't mean you have an entitlement not to have to go through that proceeding to begin with. It's just as long as you have judicial review at the end of the day. Because that's, for example, what happened in – what happens in a lot of our cases where we say you have to go through an agency route. Even though we understand you're objecting to the agency route, you just have to go through the agency route, raise your objections, and then you get judicial review at the back end. That's what happened in the John Doe case about the CFPB director. Even though the PHH had already – the panel decision had already come down, and there was a constitutional objection to the composition of the CFPB, the single director, the – our court still said we understand that you have that argument. We understand that you don't want to go through the agency proceedings, but you still do. You go through the agency proceedings. You always have judicial review at the back end. And I'll tell you what that's going to result in if you say that. Just what's happened in the Lucia case. Mr. Lucia was told you've got to go through the proceeding again, and he brought a suit in Los Angeles in the district court, and he said I'm not going to go through this. I want an injunction against having to do this futile, idiotic thing of going through it again because these ALJs now properly appointed by the commission, those ALJs have a new level of tenure protection. Okay, so he got kicked out of district court under, in fact, this court's precedent that says you've got to go through the proceeding. What he's saying is I went through it once. I don't have to go through it twice. Where's that rule? And so he got kicked out. It's in the Ninth Circuit. Ms. Cochran, SCC case, she had her – The result that you just accurately portrayed in Lucia, that's the point, is that they didn't have to go through the agency. That's because it's futile. Ms. Cochran brought the same kind of action that Mr. Lucia did, said I went through the proceedings. I don't want to be back before another SCC ALJ that has dual tenure protection. She filed her case in Texas, and her case was argued last week in the Fifth Circuit Court of Appeals because they thought it was serious enough to put a stay on the SCC. They enjoined the SCC from proceeding until they made a decision of whether she had a chance of probably or possibly winning. So at least some courts are open to the question. This one should be too. You should not make our clients – these are people that clean stables, that board horses. You should not make – we're not here by some not-for-profit corporation. We represent these people at the ground level. And they just shouldn't have to go through a futile exercise to say, well, we've raised these – do you think that the Secretary of Agriculture has authority to say that the ALJs are not lawfully appointed because they violate the separation of powers? Absolutely not. Why should we have to go before somebody that's the head of an agency that can't possibly give us the relief to come back to a court? That's been true in a lot of our cases. That's too bad, isn't it? Let's rethink that then. Let's wonder about why. But you're asking us to rethink something that we've already established. There's other cases – if I could just finish. I'm sorry. No problem. There's other cases in which the exact same arguments have been made, maybe not perhaps as forcefully as you're making them, but the exact same arguments have been made to the effect that it doesn't make any sense to require going through the agency because there's no way the agency itself is going to declare itself to be in violation of the Constitution. It's going to have to come back up for judicial review anyways. And we've had cases – Jarkizi, the entire Thunder Basin line of cases. They all say you still have to go through the agency process. Utility waste – this Court's decision. I'm sorry, Your Honor, this answers your question, too. In utility waste, this Court refused to remand a case back to an agency – I forget which one, but it's cited in my brief – until they had decided the jurisdictional issues. They also agreed to decide a statutory issue. So they decided whether or not – because it would have been futile to send it back. Utility waste is one of the main cases that we cite from this Court that says this Court ought to take up the jurisdictional questions before they remand it. How's that for luck? Why don't we hear from the government, and then we'll give you some time for rebuttal. Thank you very much, Your Honor. I went a little over. It's all right. Thank you. We were asking you questions. Excuse me. May it please the Court, Daniel Aguilar for the U.S. Department of Agriculture. We agree with petitioners that their initial adjudications were held before an ALJ, who had not been appointed by the head of department. And after Lucia, we agree that that ALJ is an officer of the United States who needed to be appointed consistent with the Appointments Clause. And consistent with Lucia, we agree that the remedy is remanded for a new proceeding. To an ALJ. You usually ask us how it works under regulations, and as we've noted, that the department's ALJs have been appointed by the Secretary consistent with the Appointments Clause. So the Lucia problem is solved. Yes, Your Honor. But the double-for-cause removal problem is still present. Well, so two things on that. One, we think that the result in any event is remand, regardless, so that remand's appropriate. But just going forward, too, I'd note that, you know, they can win on the merits, because we're not going to rely on the default on proceeding. We'll ignore the default. They're allowed to present formative defenses if they want to and present evidence and have a hearing and all of the normal rights that they're associated with an adjudicative proceeding. Just on the question whether we reach the removal issue, how is this case in its current foster different from PHH, where we had an alternative ground for resolving a question before us, and then we went on to say, well, we're not going to remand to an agency that may be unconstitutionally structured. We're going to decide the constitutional issue to avoid that. So I think a couple of things. One, as I understand it, the challenge from PHH was preserved before the agency, and here it wasn't, right? They conceded that they didn't raise the removal challenge before the agency. And by statute and regulation, you're required to exhaust all issues before the agency, before you hit jurisdiction. Put aside preservation for a second. Is there anything else? Well, then the other thing that, yeah, the second thing that I would point to is, as I believe it was the case in PHH, the Petitioners were contending that because the Director's removal restrictions were unconstitutional, the remedy would be that the agency could not act at all, which, as I understand it, is why the Court said you needed to reach that, because although you're entitled to a remand on the first part, it's questionable about whether a remand is even appropriate under the second part. And here, I think that they haven't identified any cases where a remand would be inappropriate if the ALJ's removal protections were at issue, right? The statute vests the adjudicative authority in the Secretary. The Secretary has the authority to act. And if necessary, I mean, the Secretary could just hear the adjudication himself and decide. Right. In other words, on that distinction, the point you're making is, in CFPB, in the CFPB context, anything that would have happened would have arguably been invalid if the single Director structure was constitutionally problematic. I understand the Petitioners making that point, and that was their request for remedy from removal incorrectly, yes. Whereas here, if you're talking about the ALJs, it's that you're talking about a particular officer performing a particular function, not that the agency structure ab initio is problematic. Correct. And I don't understand them to be making any argument that the Secretary somehow lacks authority to conduct these adjudications. And the statute vests that adjudicative authority in the Secretary. It says, before you go and find a violation of the Works Protection Act or impose a monitor, penalties, or disqualification, the respondent is entitled to notice and hearing before the Secretary. And then by regulation, the Secretary has delegated that. Those regulations are still in place, right? Yes. And so to the extent that they were saying there's no regulation that would allow the practices or procedures to occur before the Secretary, I don't think that's true. If you look to CFR, sorry, 7 CFR 1.132, that's a definitional section. So it defines a judge to be an ALJ. It also says the judicial officer is somebody who has been appointed to be the judicial officer or the Secretary when performing the acts that have been delegated to the judicial officer. And then 7 CFR 2.12 says that the Secretary can obviously revoke a delegation to anyone, including the judicial officer. Do you think that's realistic, that the Secretary of Agriculture would personally adjudicate a case about whether this particular horse was mistreated? I think the Secretary certainly has that power. And to the extent that the claims here are ones about whether the ---- You have regulations in place that would direct the remand back to an ALJ, which happens all the time, and you have a theoretical but seemingly wildly implausible possibility that the Secretary would say, oh, I want to do this adjudication myself. That doesn't seem like much of a reason. I disagree, Your Honor. If I can take a step back. If we're talking about the judicial officer issue, their claim is that ---- No, no. I'm talking about the ALJ. Okay. Sorry. The double for cause. Sure. I mean, the case for our resolving these issues seems to me much stronger with regard to ALJ issues than judicial officer issues. So that's what I'm focusing on. Sure. I would disagree with that primarily also based on the fact that here you have a statute that says you must exhaust all the administrative remedies according to the practices established by the Secretary. So that's the forfeiture argument. That's the forfeiture. And then the regulation of hearings before the judicial officer says, argument before the judicial officer is limited to those issues that you raise before the judicial officer or that the judicial officer him or herself identifies and asks for a briefing and argument on. And everybody agrees here. I mean, they conceded during the opening argument that they did not raise a removal challenge at any point. Was there a response to their argument that, well, there was no occasion to raise that challenge? Yeah. I don't think that ---- I mean, so the fact that they say we couldn't raise it, I believe, because there had been no holding that ALJs were officers yet. I don't think that's an impediment to making a removal argument. I mean, I would note in the Seventh Circuit there was a case called Bebo v. SEC, which I believe this court cited in its Strachese decision about, you know, jurisdiction of whether or not somebody can sue in district court to enjoin SEC proceedings. And in the Seventh Circuit, the plaintiff there had raised a removal challenge to the ALJs, arguing that there were multiple layers of forecast removal protection, which was unconstitutional. As I recall it, there was no accompanying appointments clause claim. And so the fact that you can raise a removal claim, even without saying that this person has or has not been properly appointed, goes to show that you can raise this argument or argue in the alternative. I mean, they were making an argument that the ALJs had not been properly appointed. Right? That was preserved. They made it repeatedly. Do you think that the provisions you're relying on for the proposition that the issue needed to have been raised before the agency, do you think that that's a jurisdictional exhaustion requirement? No. Because you didn't make that argument. No. This Court held, I think it was in Munsell v. ---- I think we held it's not. Yes. This Court held that you have a mandatory statutory rule. Yes. It's a mandatory claims processing rule. But we also have FRITAG, which says precisely with respect to that category of rule, that we excuse preservation. We excuse failure to preserve, to decide. And that was an appointments clause issue. But we did something similar in Noel Canning with respect to a removal issue. If I can, I think that the issue here is different because of the way that the statutes work here. In FRITAG, there was no statutory regulation that imposed forfeiture. That was just the backdrop rule of forfeiture, which is judicially created, and there are judicial exceptions for it. In Noel Canning, the question was whether or not the NLRB could act at all. Right? Whether it had a quorum. And so, therefore, it was an exceptional circumstance, which the statute recognized that you can excuse forfeiture in exceptional circumstances. Sorry. FRITAG, the phrase I jotted down in my notes is they were talking about what they described as a category of errors that are structural but non-jurisdictional. And that describes this case, this removal claim to a T. Well, if I could, Your Honor. Again, in FRITAG, there was no statutory regulation that imposed forfeiture. And what the Supreme Court held in Ross v. Blake is that in the case about the PLRA and whether or not you have to exhaust administrative appeals before you can bring a suit there, what the Supreme Court said is you look to whether or not the statute has built-in exceptions to an exhaustion requirement. And you do not go – if the statute doesn't, then you do not have judicially created exceptions to that forfeiture requirement. I think there the Fourth Circuit has held we will excuse forfeiture because of special circumstances. And the Supreme Court said the statute doesn't talk about special circumstances. You can't excuse forfeiture on that basis. And so here, there's nothing within the statute that allows for an excusal of forfeiture. It says you have to raise these issues. But you don't just – if it's non-jurisdictional, then we can't excuse forfeiture. Right. Not if it's a mandatory claims processing rule. If it's a mandatory claims processing rule, what the Supreme Court has said in cases I think like Ross v. Blake or United States v. is properly and timely invoked, saying you forfeited this. You didn't exhaust your administrative remedies. It is mandatory to apply. What's the difference, then, between a non-jurisdictional claim processing rule and a jurisdictional bar? You're saying as to both, we have no discretion to excuse a forfeiture. No, Your Honor. If I could, I think that there is a meaningful difference. So, for example, if it's a jurisdictional issue, one, you have to reach it. Right? You have to determine whether or not the court has jurisdiction. Two, even if it's non-jurisdictional, oftentimes statutes will include – like in the NLRB statute, it says you're required to raise issues before the board except for in exceptional circumstances. And then that's obviously allowing for some category of claims to be excused. And then the court can interpret that and say whether or not – That's because it's built into the rules it began with. Exactly. So in here, your argument is that there's nothing built into the rules it began with. But I guess the difference is the one you flagged earlier, which is that with the jurisdictional one, it doesn't matter if it's been flagged. With the non-jurisdictional one, at least the party has to have flagged it. Yes. I think that's correct, Your Honor. So that is a – I suppose that's a distinction. And also, I mean, FRITAG means that it can be reached. Nothing says that you have to reach it. And that's correct. And there, the court exercised its discretion in a particular case where there wasn't a statute of regulation imposing forfeiture. Are you aware of a situation in which, if we assume that we're in the discretionary box and the question is whether, as a matter of discretion, we should reach something that we can, putting aside your argument that we can't even reach it because it's mandatory claims processing. Let's assume we're in the box where we say we can reach it if we want to. We can excuse the forfeiture and we can reach it if we want to. And the question is whether we should. Are you aware of a situation in which a court has exercised discretion to reach something when the proceedings were going to be remanded anyway? I can't recall one off of the top of my head. They cite the utility waste case for this proposition. As I understand that case, the EPA had agreed to a voluntary remand to essentially reconsider actions that it had already taken. And the court noted that there was a – not that it was discretionary, but that because that wasn't a mandatory claims processing rule, right, that was just a request for a remand. And there I think it was that the court said there are still some statutory issues that constrain exactly what you could even do on remand and that would work to the prejudice of particular parties. And so, therefore, we will decide those issues. Now, I don't think that that reasoning applies here for the reasons that we laid out at the beginning of our brief where we're saying that remand is appropriate. Because they forfeited the removal clause claim, the judicial officer will not hear their case on appeal. And as to whether or not there need to be separate proceedings before imposing a disqualification order, we agree that they're entitled to a remand. The initial decision is vacated. And so that question doesn't even need to be reached because there's been no finding yet of a violation or an imposition of a civil monetary penalty. What about the argument that the ALJ is a principal officer? So that I don't think is true at all. On the merits. On the merits. On the merits, you don't think it's true. But in terms of whether we should address it. So you have the argument. So there's three arguments I think that are before us, if I'm counting them correctly. Sure. ALJs are principal officers. ALJs are protected by double layers of foreclosure removal, which creates a problem under free enterprise. And then the judicial officer is a principal officer. As to the one that says that the ALJs are principal officers, on the question of whether we reach that argument, what's the government's view about that? I don't think you need to reach it. Again, because, Phil, the result is a remand to the agency for further proceedings. And to the extent that you're still going to be agnostic about the result of that, we obviously think that they are inferior officers and we can discuss the merits of that if necessary. But the result is still agreement. And if they prevail on the merits, which we've noted, they're entitled to present defenses, they're entitled to make their case. And if the agency finds in their favor or if the parties reach a settlement, which as we've noted has happened in a lot of cases that have been remanded under similar circumstances, I mean, that resolves the issue. And this Court doesn't need to address those. I mean, the possibility of settlement doesn't seem like that advances the ball a great deal because that's true in any case in which a court could remand. So that would have been true in PHH. That would have been true in Noel Canning. There's a lot of situations in which a settlement could occur. That's true, Your Honor, but that's also just showing that there can be a favorable resolution of the case where the court doesn't need to pass on particular claims that have been raised. And yet those cases exercise discretion to reach issues. Not that I recall. So I note in this Court's order in Timbervest v. SEC, there the petitioners raised an appointments clause claim to the ALJ. The SEC agreed that that was meritorious and they deserve a remand. They had also raised an argument that the adjudicative proceedings couldn't proceed because the statute of limitations had run and that there was a removal challenge to the ALJ similar to the ones made here. And here the Court remanded that case and said we don't need to address those issues primarily based on the SEC's argument on the motion that they could prevail on remand. And on remand, the parties ended up settling. A similar posture happened in the Sixth Circuit in Inouye-Blackburn, which was a Horse Protection Act proceeding out of the Sixth Circuit. There they raised an appointments clause challenge to the ALJ and they also raised an argument about the judicial officer not being properly appointed. Do you know in Timbervest, do you know? So in Timbervest, I went back and looked and I think it's right that the challengers raised the same, effectively the same removal challenge that's being raised here. Yes. For the Court of Appeals and we remanded anyway. Do you know whether that was preserved before the agency? Yes, it was. And the agency issued a decision, as I recall, rejecting that on merits and saying that I think the analysis was something along the lines of we've held that our ALJs are employees and even if they weren't, it fails for several reasons. And so that was preserved for judicial review. Can I ask a question about the judicial officer? On preservation or are we at the merits yet? I think this straddles preservation and the merits, then we can go to the merits. On judicial officer, principal officer, so in your brief, you say that it's not going to be an issue on remand because the person who is now the judicial officer won't sit in judgment of this case on remand. That's correct. And so what's going to happen? So if it goes back down to the ALJ and there is an adverse finding against petitioners and they choose to appeal, then it's a decision for the secretary about whether to hear the case personally or whether to appoint another judicial officer to hear the case. And I think that's a decision within the secretary's discretion and I don't want to bind his discretion. So if it goes to another judicial officer, then obviously the same claim remains, that the judicial officers. That's a possibility, but it rests on a couple of contingents, right? They have to go back down to the ALJ. The ALJ has to find against them. There has to be a timely petition for review. So I think you're saying that it wouldn't necessarily come up again, but at least there's a possibility that it will come up again. There is a possibility, but I don't think that that's a reason, you know, because it rests on a series of contingents, I don't think that that's a reason that the court needs to reach it. So if we were to reach the double layer for cause protection, your argument seems to be largely a statutory one about how we should interpret the good cause provision. But that's an argument that was rejected in Free Enterprise Fund, so. I don't think it was rejected, Your Honor. It was what the court said is that the removal question is distinct from the appointments question. The appointments question was decided by the D.C. Circuit. The removal question has not yet been litigated in the other courts, and we are declining to exercise our discretion to add that essentially as a question presented in the case. Can you cite any cases where courts have interpreted the good cause provisions narrowly in the way that you suggest? I don't believe that that's come up because these challenges to 5 U.S.C. 7521 have been more recent. And in the cases in which they've been raised, either the court has not reached them because sometimes the case has not been jurisdictionally proper, or because the remand has been granted on other grounds, such as on the appointments clause ground. So I don't – because this argument is relatively new, I don't know of any court that has yet construed 7521 and what it means. I'm not sure that it is new. I mean, there are – I mean, in a number of these cases, I mean, and more to read for cause provisions narrowly, right? I mean, you know, in Free Enterprise Fund, they say the removal restrictions set forth in the statute mean what they say. Well, in there, it was because it was an unusually high level of protection, right? It was more than just regular for cause, and the Supreme Court noted that multiple times in its opinion. But to the extent that Free Enterprise Fund is relevant here at all, I think it's relevant in footnote saying that we – our holding today doesn't bear on a class of adjudicators known as ALJs. It doesn't say that it doesn't bear on it. It says they're declining to reach those questions, I think, in footnote 10. Right. And so it's saying that because we think that they might be different. And so before you reach that constitutional question about whether or not you think that they might be different or whether the same reasoning applies, what the canon of constitutional avoidance means is that you should read the statute reasonably. And if it can be so reasonably interpreted to avoid reaching a constitutional question, then that's the reading that should be adopted. I mean, isn't it reasonable to interpret a statute that provides for cause removal protections to essentially mean something much closer to at-will removal protections? I don't think that it's at-will removal protections. I mean, we've explained in our brief that we think that the good cause – poor cause removal protection here encompasses things to failure to lawfully follow a directive or poor conduct in your proceedings, poor adjudications, and that the MSPB has a role to play in it. But I think that the reason that argument there is fairly brief is because of the reason that it's been forfeited and that forfeiture is mandated by statute and regulation. And so this Court cannot reach it. Is it – on your theory, is it – would it be a lawful directive for the Secretary of Agriculture to instruct the ALJ, I've looked at this case and I want the plaintiff to win, or I want the enforcing authority to win? I think that if that's based on a reasoned interpretation of the record and evidence and legal arguments, that's what you're – Let's assume the evidence is genuinely disputed and the Secretary says, I think the enforcer should win, I'm directing the ALJ to decide the case that way. I think the Secretary has statutory authority to do that. Whether or not that's a lawful directive – And if the ALJ disobeys that directive, the ALJ can be removed for cause. No. That's where I was hesitating. I don't want to go out further to say what is or is not a lawful directive in a particular circumstance, because as I've noted, this construction of it, I think that there needs to be some amount of judicial development about what a lawful directive actually is. But so long as that is encompassed within the four clauses of legal protection, we believe that that's adequate to preserve the executive's authority to control the executive branch. I mean, it seems like it's a pretty big fudge, right? Because either the Secretary can make that directive, in which case you've solved the removal concern, but you've basically overruled Humphrey's executor, or the Secretary can't make that directive, in which case we're right back to two levels of independence. Well, we're not asking this Court to reverse Humphrey's executor. What we are saying – Is there anything distinctive about this removal, this for-cause formulation from run-of-the-mill administrative law ones? Or let me ask you, is there anything distinctive about this for-cause protection from the one that protects FTC commissioners? I don't know. I haven't looked at the FTC statute. Let's assume there's not. I mean, under your theory, the President can direct the FTC commissioners to pass a regulation that's within the scope of their statutory authority, and if they don't, he removes them for cause. Well, I think that the analysis here is a little different, right? On the FTC analysis, there's one layer of for-cause removal protection. But your statutory theory is that for-cause means – for-cause removal is supported when a superior political officer directs the putatively insulated adjudicator to come out a certain way. Our claim is – again, I don't know that that necessarily follows as a lawful directive, but if you assume that it does, and you're concerned about what would happen at the FTC level, our argument here is that 7521 should be interpreted in a particular way because as petitioners are alleging, there is a double layer of for-cause removal protection which would not be true in the FTC realm. To the extent that the Court has questions. I guess I'm going down the same road that I think Judge Rao was, which is this kind of reading of the statute would seem to unravel all of the removal jurisprudence back to Humphrey's executor, because it is an understanding of for-cause removal that has nothing to do with the existence of two layers. Well, to the extent that you have hesitancy or questions on the merits of our statutory instruction or even going further what the constitutional resolution of this question should be, that just shows that this is the kind of thing that ought to be preserved before it's properly presented before a court. And to the extent that you're concerned that this might not come up, I can allay that concern. People are properly raising removal challenges in various administrative proceedings that I know of, and I know that those will eventually reach the courts of appeals and very likely this Court. We also don't have anybody who's defending the merits of – if you think that the for-cause protection is more robust than you're saying it is, then we don't have anybody who's defending the constitutionality of that. Well, we haven't briefed the constitutionality of that. That's correct. We haven't briefed that portion of the argument. But the argument's been made. I mean, there's Supreme Court justices who think that there's a distinction that's meaningful. And so it still might be valid even if you don't construe for-cause in the way that you are. There are a number of arguments that could be made, and if this Court wants to consider them, it should do so in a properly preserved case. Do you have a position on – assuming for-cause protection means that the ALJ – the Secretary can't direct a decision by the ALJ – can't remove because the ALJ decides a case a certain way – do you have a position on the constitutionality of this structure, notwithstanding the double layer of protection? I know you didn't brief it, but does the government have a position? Not that I know of. I don't know of a position that we have on that to the extent that there would be some analysis necessary on it. I note that Meyer says that even if you're not permitted to remove a decision-maker before they make a decision, the principal officer can obviously consider that the decision-maker is not permitted to be removed. For example, if they clearly misapplied the law or ignored relevant facts or otherwise conducted their adjudication in a particularly bad way, that we weren't removing them. What if they didn't just – what if they just didn't like the outcome? Again, that's not something that I'm prepared to make a statement on. I know this is a position that's been vetted by the Solicitor General in our merits brief in Lucia, and I don't want to get out of any decisions that the Solicitor General might need to make. As I understand it, the government isn't taking a position on the question that Judge Katz has raised. And I'm not. I was just noting a relevant analysis that you might want to consider when doing that. Can I get back to the – I don't want to stop the question on this issue. No, go ahead. On the ALJ principal officer one. So are you making an argument that the ALJ principal officer objection that's been raised, that that was forfeited? I can't recall whether or not that was raised below. If it was forfeited, we've noted it in our brief. I noted everywhere where the argument had not been raised before the judicial officer. Okay, so as to that one, your view is that we still don't need to get to it because there's still the argument that, well, they could win anyway on remand on other grounds. That's correct. But that's what you're resting on with respect to that issue. I think that's correct. And to the extent that you want to get into the merits on it, I mean, they're clearly subject to supervision and control, right? Their decisions can be revisited and reversed by both the judicial officer and the secretary. They have to follow directions that the secretary promulgates. I mean, those are all the same factors that were present in Edmund, which are that those intermediate military court judges were inferior officers. Just one last question at the end of the analysis remedy. Suppose we reach the removal issue, find that the double for cause structure is unconstitutional. Do you have any suggestion for us on what the remedy should be? Assuming that the court were to overlook the statutes and regulations of forfeiture and reject our statute for construction, then, yes, I believe that the position that the solicitor general made in the Lou Chia merits brief was that Section 7521 should be severed. I'm sorry. Which one is that? That's the for cause removal protections for the administrative law judges. For the ALJ. Not for the MSPB. So you want to preserve the for cause protection at the MSPB level and you want to preserve MSPB review? Yes, that's the position. And just excise the ALJ protection? Yes. Okay. So what would that mean, then, for the MSPB to review an at-will removal of an ALJ? So if you're keeping the MSPB there, what would the MSPB be doing? Because if the secretary can remove the ALJ at will, why go to the MSPB at all? Well, I know that there are usually still protections against adverse employment actions, even for at-will employees. That would be after the fact, right? I believe the statute is currently structured. The secretary essentially goes to the MSPB in order to get the removal. So what would be the determination that the MSPB would make in advance of removal, if there was an at-will standard? There are still statutes and regulations that prohibit adverse employment actions for invidious reasons, such as on national origin, race, sex, religion. And so the MSPB clearly there has a role to play, even in a regime where 7521 has been severed. For all the reasons that we've explained, though, we don't think the court needs to get that far. Okay. Thank you, counsel. Thank you. I'll give you two minutes for rebuttal. I've got two minutes. It'll be hard. Maybe you'll be patient with me. Let me start in the middle. In a letter that was written just a few days ago to this court by the government, it for the first time stated that under 7 U.S.C. 6912E, we were precluded from bringing this issue about tenure. And it cited a D.C. Circuit case. This letter just arrived a few days ago. Read 6.7 U.S.C. 6912E. Please read it. It just says, before a person can bring a lawsuit against the secretary, an agency, or an officer, it must exhaust administrative remedies. And surely you recognize we have not brought a lawsuit. The case that is cited from this court that says that it recognizes 6912E is a case where the parties wanted to bring a Bivens action, and they had not exhausted administrative remedies. That statute does not act as a preclusion statute or a forfeiture statute in this case. Rule 1.145 does say that you cannot, in oral argument, raise issues that you have not raised in your petition before the judicial officer. That is not a preclusion statute. That is a direction about oral argument. That's a long rule. But it does not preclude you from saying anything in your petition. You can not say something outside your petition, but let me assure you as to one of the questions, we certainly raised that the judicial officer acts as a principal officer. There's not a preclusion statute, and there's not a preclusion rule. But I don't think the government's even arguing that that claim was forfeited. No. But we didn't forfeit the ALJ claim, because that's not. We didn't raise it, but it's not forfeited because of that rule or those statutes. That's what I'm saying. Okay. All right. As to PHH, it was important. Thank you for reminding the court of that, Judge Katsas. In fact, what the remedy is going to be in that is before the Supreme Court, it's granted review of that case. But when the Supreme Court granted review, it added an issue, and that issue was what do we do if we find that the director, that's one director, if they say, well, you're not constitutionally appointed, does the whole agency go, or is there a way we can constitutionally or lawfully sever some portion of the statute? So that issue's up for grabs now, precisely on PHH. It is the CFPB. Let me look at my other notes. Blackburn and Timber best, and either one, as we said in our brief support, remanding when the issue has been raised. Judge Senator Wasson, you asked, well, did they raise it in Timber Best? As I pointed out in our brief, in Timber Best, early in the proceedings, they did point out 7212, and they made an objection. But after Lucia was decided, they made a motion to manage the case, and then the government responded with a motion to remand the case. And in their motion to manage the case, they wanted this court to retain jurisdiction and decide before remand whether or not the statute of limitations barred the case. They did not raise 7212 again. It was not before the panel that remanded that case. There was kind of a mix-up. Sometimes in answer to your question about can the secretary tell the J.O. what to do, it reverted to or became what can the secretary tell the ALJ what to do. Let me start with the ALJ. I meant ALJ. Did you mean ALJ? I meant ALJ. Oh, okay. I thought I may have misheard then also. 5 U.S.C. 54-D deals with the ALJ, and it says that under 556 the ALJ shall make the initial decision, I mean, sorry, yeah, and such employee may not, one, consult a person or party on a fact in issue unless notice and opportunity is given for another hearing to the other parties. The ALJs are different from the J.O.s. Their authority arises under 556, 557, and 558 of the Administrative Procedures Act. None of the ALJ's authorities were ever vested in the secretary, so he doesn't have those authorities. He simply designates under 7 CFR 2.25 that they shall perform the functions set forth in the Administrative Procedures Act. He has no authority over them whatsoever. As for the J.O., since that I thought came up, of course once the secretary delegates the authority to make the final decision in a case to the judicial officer, 7 U.S.C. says that the secretary's functions are vested in the J.O. and not in the secretary. So the J.O. becomes the principal officer. The secretary can stop him, remove the delegation, but anything that the J.O. does up to that point is, in fact, the decision of the secretary. He does not have the authority of nullification. And the leading case on that is Utica Packing Company versus the secretary out of the Sixth Circuit, where the secretary tried to manipulate a decision in, just like he said, I want us to win this. I don't want them to win it. So he took the he discharged the J.O. from those duties about that one case, gave them to another person, designated that person to jail, filed a motion for reconsideration, and they won. So in any event, that was a violation of due process. I tell from your looks, my time is up. Thank you very much, Counsel, for your argument. I appreciate it. Thank you, Counsel. The case is submitted.
judges: Srinivasan, Katsas, Rao